Michael P. Pappas, Esq. (MP 6716)
MICHAEL P. PAPPAS LAW FIRM, P.C.
3 Columbus Circle, 15th Floor
New York, New York 10019
(646) 770-7890 (phone)
(646) 417-6688 (fax)

*Attorneys for Plaintiff*
  *Jamel Weaver*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMEL WEAVER,

                Plaintiff,

-against-

ABLE SERVICES, INC.,

                Defendants.

**Case No.**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

      Plaintiff Jamel Weaver, as and for his Complaint against Defendant Able Services, Inc., alleges as follows:

## JURISDICTION AND VENUE

      1.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. ("Section 1981"). This Court has supplemental jurisdiction over the New Jersey state law claims under 28 U.S.C. § 1367 because they are so related to the claims in this action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant conducts business in this District and the acts and/or omissions giving rise to the claims herein took place in this District.

## THE PARTIES

3. Plaintiff Jamel Weaver is a Black adult male individual who resides in the State and City of New York. At all relevant times, Plaintiff was employed by Defendant Able Services, Inc. in the State of New Jersey and was a covered "Employee" within the meaning of the New Jersey Law Against Discrimination ("NJLAD").

4. Defendant Able Services, Inc. ("Defendant" or "Able Services") is a California corporation with its principal place of business at 868 Folsom Street, San Francisco, CA 94107-1123. Able Services is one of the largest janitorial and facilities management companies in the United States and does business throughout the nation, including in New Jersey. At all relevant times, Able Services was a covered "Employer" of Plaintiff within the meaning of the NJLAD. On or about September 30, 2021, Able Services was acquired by ABM Industries, Inc., a publicly-traded corporation that is one of the largest facilities management companies in the world.

## FACTS

5. Plaintiff Weaver was employed by Able Services as a maintenance worker at 100 Park Avenue in Fort Lee, New Jersey. He was employed full-time and earned an hourly wage of $15.65.

6. Able Services employed approximately 12 maintenance workers at 100 Park Avenue, and another 12 maintenance workers at its sister building, 800 Park Avenue. Of the 12 maintenance workers at 100 Park Avenue, Mr. Weaver was the only Black

employee. Likewise, only 1 of the 12 maintenance workers at 800 Park Avenue was Black. Virtually all of the other maintenance workers at both buildings, as well as all of the company's supervisors at both work sites, were Hispanic. During Mr. Weaver's 2½ years of employment, no other Black persons were hired at 100 Park Avenue, and only one Black person was hired at 800 Park Avenue, who was employed just a few weeks.

7. During his employment with Able Services, Mr. Weaver was marginalized and made to feel like an outcast by his Hispanic co-workers and supervisors. For example, not long after Mr. Weaver was hired, one of his Hispanic co-workers approached him and stated, "What are you doing here? As a matter of fact, why are you even here?" Mr. Weaver, who had just met the employee, did not know him, and had never worked with him before, reasonably inferred that the remarks were a reference to the fact that Mr. Weaver was the only Black employee on a staff that was otherwise exclusively Hispanic. As a result of the co-worker's comments, Mr. Weaver felt unwelcomed and belittled, and lodged a complaint with Able Services Human Resources Department, which went unaddressed. Subsequently, Mr. Weaver was deliberately left out of a company-organized group photo taken during the winter holidays, and only Hispanic employees were invited to participate.

8. In or about July 2020, Abel Services terminated the only Black maintenance worker at 800 Park Avenue, a gentleman named "Tarik". Upon information and belief, Tarik was fired after the company tracked him by closed circuit camera and contended that Tarik was "loafing" during his shift.

9. Mr. Weaver, who had regularly observed Hispanic maintenance workers engage in similar or worse conduct in front of their supervisors without being disciplined,

believed that the company's firing of Tarik was racially discriminatory. In fact, Mr. Weaver frequently voiced this opinion and complained to co-workers about racism at Able Services and his belief that Tarik was fired for racially discriminatory reasons.

10. In September 2020, Mr. Weaver's supervisors at Able Services called him into a meeting and wrote him up, purportedly for not working continuously during his shift (the same alleged offense that had been used to justify the firing of the only other Black maintenance worker, Tarik). Mr. Weaver's supervisor told him that the company had traced him on closed circuit camera and observed him "slacking off." (It seemed to be Able Services' *modus operandi* to track Black employees by camera as a precursor to firing them, but non-Blacks were not subjected to such scrutiny and surveillance.)

11. According to Mr. Weaver, it was common for there to be down time during maintenance workers' shifts, and he had completed all of his assignments on the day in question. In addition, as mentioned, Mr. Weaver had frequently observed his Hispanic co-workers hanging around and doing nothing for hours, with the knowledge and participation of their supervisors, yet they were never written up or disciplined in any manner. Mr. Weaver was also unaware of any instance in which Hispanic workers had been tracked by camera during their shifts.

12. Mr. Weaver, who believed in good faith that his write-up was unfair and racially discriminatory, responded by again raising the issue of racism at Able Services. Specifically, Mr. Weaver asked why the company had so few Black workers, and asked the company to explain why Tarik had been fired. Immediately after Mr. Weaver raised the issue of racial discrimination, Able Services informed Mr. Weaver him that he was being suspended "indefinitely," and he was sent home.

13. Mr. Weaver remained on unpaid suspension for several months without hearing from Able Services. Finally, in or about February 2021, Mr. Weaver learned that the company had terminated his employment some time ago, without ever notifying Mr. Weaver or complying its legal obligations concerning termination notice and related matters. Able Services did not provide any explanation as to why it terminated Mr. Weaver.

14. Based on the above facts and circumstances, and because no legitimate reason existed for terminating Mr. Weaver's employment, a jury could reasonably find that Able Services would not have terminated Mr. Weaver but for his race and his complaints about racial discrimination.

## FIRST CLAIM FOR RELIEF
### (Race Discrimination Under Section 1981)

15. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were fully set forth again at length herein.

16. By its aforesaid actions, Defendant unlawfully terminated Plaintiff's employment because of his race, Black.

17. Defendant would not have terminated Plaintiff's employment "but for" his race, Black.

18. As a result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered significant damages, including lost wages and benefits, as well as damages for pain, suffering, humiliation, and emotional harm.

19. Defendant is thereby liable to Plaintiff for all damages available under Section 1981, including damages for lost past and future compensation and benefits, emotional distress damages, punitive damages, interest, costs, attorneys' fees, and such other legal and equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Retaliation Under Section 1981)

20. Plaintiffs realleges and incorporates by reference all preceding paragraphs as if they were fully set forth again at length herein.

21. By its aforesaid actions, Defendant unlawfully terminated Plaintiff's employment because he engaged in legally-protected activities under Section 1981, *i.e.*, making good-faith complaints about racial discrimination by Defendant, in violation of Section 1981.

22. Defendant would not have terminated Plaintiff's employment "but for" his protected activities.

23. As a result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered significant damages, including lost wages and benefits, as well as damages for pain, suffering, humiliation, and emotional harm.

24. Defendant is thereby liable to Plaintiff for all damages available under Section 1981, including damages for lost past and future compensation and benefits, emotional distress damages, punitive damages, interest, costs, attorneys' fees, and such other legal and equitable relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (Race Discrimination Under NJLAD)

25. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were fully set forth again at length herein.

26. By its aforesaid actions, Defendant discriminated against Plaintiff in the terms and conditions of his employment based on his race, Black, in violation of the NJLAD.

27. As a result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered significant damages, including lost wages and benefits, as well as damages for pain, suffering, humiliation, and emotional harm.

28. Defendant is thereby liable to Plaintiff for all damages available under the NJLAD, including economic damages, damages for emotional harm, punitive damages, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**(Retaliation Under NJLAD)**

29. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were fully set forth again at length herein.

30. By its aforesaid actions, Defendant unlawfully retaliated against Plaintiff because he engaged in legally-protected activities under the NJLAD, *i.e.*, making good-faith complaints about racial discrimination by Defendant, in violation of the NJLAD.

31. As a result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered significant damages, including lost wages and benefits, as well as damages for pain, suffering, humiliation, and emotional harm.

32. Defendant is thereby liable to Plaintiff for all damages available under the NJLAD, including economic damages, damages for emotional harm, punitive damages, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant as follows:

(1) On the FIRST CAUSE OF ACTION awarding Plaintiff all damages and remedies provided for by statute in an amount that the proof at trial shall warrant, including, *inter alia*, lost past and future wages and benefits, emotional distress damages, punitive damages, interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper;

(2) On the SECOND CAUSE OF ACTION awarding Plaintiff all damages and remedies provided for by statute in an amount that the proof at trial shall warrant, including, *inter alia*, lost past and future wages and benefits, emotional distress damages, punitive damages, interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper;

(3) On the THIRD CAUSE OF ACTION, awarding Plaintiff all damages and remedies provided for by statute in an amount that the proof at trial shall warrant, including, *inter alia*, economic damages, pain and suffering damages, punitive damages, costs, reasonable attorneys' fees, and such other legal and equitable relief as the Court deems just and proper.

(4) On the FOURTH CAUSE OF ACTION, awarding Plaintiff all damages and remedies provided for by statute in an amount that the proof at trial shall warrant, including, *inter alia*, economic damages, pain and suffering damages, punitive damages, costs, reasonable attorneys' fees, and such other legal and equitable relief as the Court deems just and proper.

(5) As to all causes of action, such other and further relief as the Court deems just and proper.

(6) Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: October 19, 2021

MICHAEL P. PAPPAS LAW FIRM, P.C.

By: s/*Michael P. Pappas*
Michael P. Pappas, Esq. (MP 6716)
3 Columbus Circle, 15th Floor
New York, New York 10019
T: (646) 770-7890
F: (646) 417-6688

*Attorneys for Plaintiff
 Jamel Weaver*